IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DISABILITY LAW CENTER OF VIRGINIA   )
1512 Willow Lawn Drive, Suite 100   )
Richmond, Virginia 23230   )
   )
      Plaintiff,   )
   )
v.   )   Case No.   3:26-cv-672
   )
HALLMARK YOUTHCARE –   )
RICHMOND, LLC   )
and   )
ACUTE BEHAVIORAL HEALTH OF   )
VIRGINIA, P.C.   )
Operating at   )
Hallmark Youthcare   )
12800 West Creek Parkway   )
Richmond, VA 23238   )
   )
      Defendants.   )
   )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

In this action, Plaintiff disAbility Law Center of Virginia ("dLCV") seeks a court order to compel the Defendants to permit dLCV to conduct an investigative monitoring visit as well as compel the Defendants to provide information to dLCV under the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et seq*. dLCV intends to conduct an investigative monitoring visit to Hallmark Youthcare, owned by Defendants, and speak with affected residents regarding two recent elopement events at the facility. dLCV has established probable cause that the elopement events were, at least in part, due to staff neglect and, therefore, intends to investigate.

1.     Three federal statutes require states to establish protection and advocacy ("P&A") agencies to protect persons with disabilities and advocate on their behalf. Those statutes are the

Developmental Disabilities and Bill of Rights Act ("DD Act" or "PADD Act"), the Protection and Advocacy for Individuals with Mental Illness ("PAIMI Act"), and the Protection and Advocacy of Individual Rights Act ("PAIR Act"). DD Act, 42 U.S.C. §§ 15001–115; PAIMI Act, 42 U.S.C. § 10801–851; PAIR Act, 29 U.S.C. § 794e. To receive federal funding under the PAIMI, PADD and PAIR Acts, states must have a P&A system.

PARTIES

2.      dLCV is a private, not-for-profit corporation that is the Commonwealth of Virginia's designated P&A organization for people with disabilities. Va. Code § 51.5-39.13.

3.      The Defendants operate Hallmark Youthcare, a facility that provides treatment and care to youth, including youth with mental illness.

4.      Upon information and belief, Defendant Hallmark Youthcare – Richmond, LLC is a Georgia corporation registered to do business in Virginia (registered agent: National Registered Agents, Inc., 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060).

5.      Defendant Acute Behavioral Health of Virginia, P.C. is a Tennessee corporation registered to do business in Virginia (registered agent: Corporation Service Company, 100 Shockoe Slip Fl 2, Richmond, Virginia 23219).

JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court under 28 U.S. Code § 1331, since the Plaintiff's federal claim is established by the PAIMI Act, 42 U.S.C. § 10801 *et seq*.

7.      Venue is proper in this district consistent with 28 U.S.C. § 1391.

8.      Defendants, Hallmark Youthcare – Richmond, LLC and Acute Behavioral Health of Virginia, P.C., operate Hallmark Youthcare, a facility located in and conducting its business

from Goochland County, VA.  Defendants are both registered to do business in Virginia and have registered agents in Virginia Venue is, thus, proper consistent with 28 U.S.C. § 1391(b)(1).

9.      Venue is also proper consistent with 28 U.S.C. § 1391(b)(2), as the alleged neglect occurred in Goochland County, Virginia within the Eastern District of Virginia, Richmond Division.

STATEMENT OF FACTS

10.     As noted above, through the DD Act, Congress established the P&A system to monitor and investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness in institutional settings such as a psychiatric residential treatment facility with the enactment of the PAIMI Act in 1986. The scope of the P&A system was further expanded in 1993 when the PAIR Act was enacted. In 2000, Congress amended and expanded the PAIMI Act to give protection and advocacy systems in the United States the authority to investigate abuse and neglect in the community.

11.     Defendants operate Hallmark Youthcare, which is a provider of residential medical and behavioral health services, care, and treatment to youth with mental illness located in Goochland County, VA. Hallmark Youthcare – Richmond, LLC is licensed as a provider of mental health services through the Department of Behavioral Health and Developmental Services.

12.     As a provider of care and treatment to youth with mental illness, Hallmark Youthcare is subject to the PAIMI Act requirements. 42 U.S.C. § 10805(a)(3).

13.     Over the last ten days, dLCV received reports relating to two elopement events of youth residing at and receiving services from Hallmark Youthcare on July 5 and 6, 2026.  These elopement events were also reported in the news media.

14.     The disAbility Law Center of Virginia ("dLCV")'s Freedom, Abuse, Neglect, and Safety ("FANS") Unit Manager Virginia Pharis went to Hallmark Youthcare on July 9, 2026, intending to conduct an investigative monitoring visit, speak with residents, and learn more about the elopement events.  Upon arrival, dLCV was asked to wait to speak with the Clinical Director.  After waiting approximately 30 minutes, the Clinical Director came and indicated that she needed to speak to the Risk Manager. Ms. Pharis provided the Clinical Director with a copy of dLCV's general monitoring letter explaining its access authority.

15.     Eventually, Jean from Human Resources spoke with Ms. Pharis and stated that Hallmark Youthcare would not provide any information relating to the elopement events, except for the prepared statement being given to community partners.  Ms. Pharis also requested the list of youth who were part of the elopement events, and Jean stated that Hallmark Youthcare likely would not provide the names of the youth involved due to Health Insurance Portability and Accountability Act (HIPAA) protections. Jean agreed to get the CEO, Elyssia Stratton, to discuss further.

16.     Ms. Stratton was given a copy of our monitoring letter and indicated that she needed to speak with counsel before allowing us access to monitor the facility.  She indicated that they would make a prompt, written statement regarding the delay or denial.  To date, dLCV has not received any written statement from Hallmark Youthcare.

17.      Additionally, on July 10, 2026, dLCV established probable cause under the PAIMI Act to believe that the elopement events were due, at least in part, to neglect by staff.  Upon

establishing probable cause, dLCV's Executive Director, Colleen Miller, sent a letter to Defendant advising that dLCV had established probable cause and would be investigating the elopement incidents. The letter also indicated that dLCV would be requesting specific information related to the elopement events, including the names and guardian information for all youth involved.

18. dLCV is entitled to the names of youth involved in the elopement events, so that it can identify and interview individuals with knowledge of the elopement events (involved youth and any potential witnesses) and perform an investigative monitoring visit.

19. Therefore, on July 10, 2026, dLCV's Legal Director, Rebecca Herbig, sent an email to Hallmark Youthcare specifically requesting the names of youth involved in the elopement events and guardian information. Ms. Herbig's email set a deadline for dLCV to receive this information from Hallmark Youthcare by close of business on Tuesday, July 14, 2026. Ms. Herbig's email advised the Defendant that they were in violation of the PAIMI Act.

20. dLCV has not received any response to Ms. Miller's letter or Ms. Herbig's email to date.

21. On July 13, 2026, in an attempt to resolve this issue without litigation, Ms. Herbig emailed a courtesy copy of this Complaint to Ms. Stratton regarding dLCV's access for investigative purposes, as well as the names and guardian information for the youth involved in the elopement events. Ms. Herbig's correspondence indicated that the Complaint would be filed on July 15, 2026, absent a response from Hallmark Youthcare.

22. To date, dLCV has not received the names and guardian information for the youth involved in the elopement events, been given access to conduct a monitoring visit, or received any other written response from Hallmark Youthcare.

23.    On July 15, 2026, dLCV's Legal Director, Ms. Herbig, attempted to reach Ms. Stratton by phone to confirm receipt of our e-mail correspondence.  She was transferred to a Ms. Willis' voicemail and left a detailed message requesting a return call.  As of the time of this filing, dLCV has not received a response.

## CAUSE OF ACTION

24.    P&A access to conduct investigative monitoring visits at a facility that provides treatment or care to individuals with mental illness is outlined in detail in 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42(b). P&A's have reasonable, unaccompanied access to conduct investigative monitoring visits. 42 C.F.R. § 51.42(b).  This access extends to minors who have legal guardians. 42 C.F.R. § 51.42(d). Investigations are permitted after dLCV receives a report or complaint and after establishing probable cause that abuse or neglect has occurred.  42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b).

25.    Because dLCV had received reports of the elopement events, dLCV was entitled to reasonable, unaccompanied access to the facility and residents at Hallmark Youth on July 9, 2026 when Ms. Pharis arrived to investigate the reports it received.

26.    However, Hallmark Youthcare verbally denied physical monitoring access to dLCV.

27.    If access is denied or delayed, "the P&A system shall be provided promptly with a written statement of reasons . . . ." 42 C.F.R. § 51.43.

28.    To date, dLCV has not received any written response from Hallmark Youthcare.

29.    Hallmark Youthcare's denial of access to the facility and residents on July 9, 2026, along with their failure to provide a prompt written statement, are both violations of the PAIMI Act.

30. Further, in order to adequately investigate the alleged events, dLCV is entitled to interview residents who may have knowledge of the alleged neglect. Therefore, dLCV requested the names of youth involved and the contact information for their guardian(s), if any. Based only on the conversation between Ms. Pharis and Ms. Stratton, dLCV believes that the Defendant may deny access based on HIPAA and other laws.

31. The HIPAA Privacy Rule permits disclosure of protected health information to protection and advocacy systems, such as dLCV, because the disclosure is required by other laws. 45 C.F.R. § 164.512(a).

32. The PAIMI Act regulations require that a facility that is basing its denial on lack of authorization shall provide "the name, address, and telephone number of the legal guardian, conservator, or other legal representative . . . ." 42 C.F.R. § 51.43.

33. To date, the Defendant has failed to produce the requested information and has not provided a written statement of the reasons for their delay or denial.

34. To date, the Defendant has failed to provide guardian contact information.

35. Defendant's failure to respond to dLCV's request for names and guardian information is a violation of the PAIMI Act.

36. The Defendant's denials, along with its failure to respond with a prompt written statement of reasons for denial, prevent dLCV from carrying out its protection and advocacy functions for individuals with disabilities and wrongfully burdens the exercise of its authority to access facilities and residents to conduct an investigation.

37. Without action by this Court to compel the Defendant's compliance with the mandates of the PAIMI Act, dLCV's ability to carry out its protection and advocacy functions on behalf of individuals with disabilities will continue to be irreparably harmed.

<u>RELIEF REQUESTED</u>

WHEREFORE, the Plaintiff respectfully requests that the Court grant the following relief:

1. Enter a declaratory judgment stating that the Defendant's failure to provide access to the facility and the names and guardian information of youth involved in the elopement events violate the PAIMI Act;

2. Enter an injunction requiring the Defendant provide dLCV with access to conduct an investigative monitoring visit and to the requested information;

3. Retain jurisdiction over this action to ensure the Defendant's compliance with the mandates of the PAIMI Act; and

4. Any additional relief, including attorney's fees and costs, that the Court deems appropriate.

For the above-stated reasons, the Plaintiff disAbility Law Center of Virginia asks the Court to enter judgment in its favor.

Dated: July 15, 2026

Respectfully submitted,

DISABILITY LAW CENTER OF VIRGINIA

By:  _/s/ Rebecca S. Herbig_____

Rebecca S. Herbig, VSB 6554
Zachary DeVore, VSB 6540
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
Telephone: 800-551-3962
Fax: 804-662-7431
Email: rebecca.herbig@dlcv.org
Email: Zachary.devore@dlcv.org